IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00946-MEH

DE'ON WAYNEWOOD,

Plaintiff,

v.

KATHLEEN NELSON, and
MARY CARLSON,

Defendants.

---

**ORDER ON MOTION TO DISMISS**

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint [filed July 13, 2015; docket #18]. The Court ordered that the Plaintiff file a response to the motion on or before August 3, 2015 (docket #19); however, the Plaintiff filed no response brief. The Court is now sufficiently advised and finds that oral argument will not assist in the adjudication of the motion. Based upon the record herein and for the reasons that follow, the Court **grants** the Defendants' motion, but permits the Plaintiff leave to amend as set forth herein.

## BACKGROUND

Plaintiff initiated this lawsuit as a *pro se* litigant by filing the operative complaint on May 4, 2015. (Docket #1.)

### I. Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by the Plaintiff in his Complaint, which are taken as true for

analysis under Fed. R. Civ. P. 12(b)(1) pursuant to *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) and under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff claims that in 2000, he was sentenced to 14 years' imprisonment in the Colorado Department of Corrections ("CDOC") with a credit of 317 days of time served. When Plaintiff was released on parole in 2007, his discharge date was May 2012. Considering the earned time days credited to Plaintiff's sentence, he was to have discharged from incarceration in 2011. However, due to sentence calculation errors by the CDOC, there were an additional four years, one month, and six days added to Plaintiff's sentence as "null time." Plaintiff sought assistance from the Defendants in the "Time and Release Operations" office for the CDOC, as well as from other state officials who told Plaintiff he was correct about the errors, but would not help to correct the errors from any other department on his behalf.

After seeking relief from state court(s) without success, Plaintiff filed an action pursuant to 28 U.S.C. §2241 in the United States District Court of Colorado, case no. 13-cv-02561-CMA, in September 2013. On May 7, 2014, the court granted Plaintiff's application finding that, although Plaintiff failed to demonstrate he had a right to receive credit against his sentence for time spent on parole, the CDOC miscalculated Plaintiff's sentence based on the application of an incorrect state statute and, thus, the court ordered the CDOC to re-calculate the sentence without reference to that statute.

After serving the additional time on parole, Plaintiff was released from parole in May 2014. Plaintiff contends the "additional" time he spent incarcerated based on the CDOC's calculation error resulted in economic and noneconomic injuries, including the loss of school credits he earned from

Community College of Aurora, the closing of athletic programs he instituted while in school, the loss of jobs each time his parole was revoked, a lost opportunity to "try out" for NFL teams, and expenses related to parole tests and fees, as well as to mental health treatment.

**II. Procedural History**

Based upon these factual allegations, Plaintiff seeks $996,620.00 in damages. The Court liberally construes Plaintiff's complaint as alleging the Defendants deprived him of his Eighth Amendment right against cruel and unusual punishment for incarcerating him longer than his properly calculated sentence. Plaintiff does not specify whether he brings his claims against the Defendants in their official capacities, individual capacities, or both.

During initial review, Senior Judge Babcock determined the named "Colorado" Defendants were entitled to Eleventh Amendment immunity and dismissed those Defendants from the case, leaving the individually named Defendants to proceed.

The individual Defendants responded to the Complaint by filing the present motion arguing they are entitled to Eleventh Amendment immunity to the extent the Plaintiff sues them in their official capacities. Defendants also contend they are entitled to qualified immunity in their individual capacities since the Plaintiff fails to allege they acted with deliberate indifference and, thus, fails to state an Eighth Amendment claim against them. As set forth above, despite an order to do so, the Plaintiff did not file a written response to the Defendants' motion.

## LEGAL STANDARDS

**I. Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the

merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Id.* (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere [conclusory] allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Pueblo of Jemez*, 790 F.3d at 1151. Accordingly, Plaintiff in this case bears the burden of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002-03 (citations omitted). The present motion launches a facial attack on this Court's subject matter jurisdiction; therefore, the Court will accept the truthfulness of the Complaint's factual allegations.

**II. Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191 .

**III. Dismissal of a Pro Se Plaintiff's Complaint**

A federal court must construe a *pro se* plaintiff's pleadings "liberally" and hold the pleadings


"to a less stringent standard than formal pleadings filed by lawyers." *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Id.* (citing *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997)). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* (quoting *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Hall*, 935 F.2d at 1110; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## ANALYSIS

"When a defendant seeks dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the court must decide first the 12(b)(1) motion for the 12(b)(6) challenge [may] be moot if the court lacked subject matter jurisdiction." *Mounkes v. Conklin*, 922 F. Supp. 1501, 1506 (D. Kan. 1996) (citing *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990)).

### I. Sovereign Immunity

Plaintiff does not specify in the caption or in the "Parties" section whether he sues Defendants in their official capacities, individual capacities, or both. Plaintiff makes clear, however, that he seeks monetary damages only. Thus, with respect to any official-capacity claims, Defendants

argue they are absolutely immune from liability pursuant to the doctrine of sovereign immunity.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, Plaintiff specifically seeks monetary damages from Defendants; to the extent he seeks such damages against Defendants in their official capacities, his claims are barred and the Defendants' motion will be granted as to any official-capacity claims.

**II.     Qualified Immunity**

Defendants also assert they are entitled to qualified immunity on the Eighth Amendment claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)). Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the

court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's Eighth Amendment claim against Defendants, the Court examines first whether Plaintiff has demonstrated on the alleged facts that Defendants violated his constitutional right against cruel and unusual punishment. If the Court finds that Plaintiff's facts state plausible violations of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

In the Tenth Circuit, imprisonment beyond one's term can constitute cruel and usual punishment for purposes of the Eighth Amendment. *Mitchell v. N.M. Dep't of Corrs.*, 996 F.2d 311, 1993 WL 191810, at *3 (10th Cir. June 1, 1993) (unpublished table opinion) (citing *Sample v. Dierks*, 885 F.2d 1099, 1108-10 (3d Cir. 1989)); *see also Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001) (granted qualified immunity on claim of former prison inmate that he was detained beyond his prison release date in violation of the Eighth Amendment); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) ("Deliberate indifference has been demonstrated in those cases where prison officials were put on notice and then simply refused to investigate a prisoner's claim of sentence miscalculation.") (citation omitted); *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), *cert. denied*, 478 U.S. 1020 (1986) ("[d]etention beyond the termination of a sentence could constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest").

To make out such a claim under the Eighth Amendment, a plaintiff must allege that the defendants acted with deliberate indifference to whether the plaintiff suffered an unjustified deprivation of his liberty. *Sample*, 885 F.2d at 1110 (citing *Haygood*, 769 F.2d at 1354-55). That is,

> a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Id.*; *see also Haygood*, 769 F.2d at 1354-55 (found that the plaintiff "presented credible evidence that the defendants, after being put on notice, simply refused to investigate [the] computational error.").

Citing to documents attached to the Complaint, Defendants contend Plaintiff fails to allege deliberate indifference because "the Complaint demonstrates that Defendants fully investigated Plaintiff's complaints and thoroughly explained their interpretation of the relevant statute at issue." Motion, docket #18 at 4. In resolving a Rule 12(b)(6) motion, a court may consider written documents attached to the complaint. *See Hall v. Bellmon*, 935 F.2d 1106, 1112 (10th Cir. 1991) ("A written document that is attached to the complaint as an exhibit is considered part of the complaint and may be considered in a Rule 12(b)(6) dismissal."). Here, Plaintiff attached correspondence between his wife and various state officials, including the Defendants, regarding his perceived errors in his sentence calculation.

With respect to Defendant Nelson, the documents reflect Nelson communicated by email with Miya Waynewood (Plaintiff's wife) on November 28, 2012 and on or about December 11, 2012

in response to Mrs. Waynewood's questions concerning sentence calculation. Docket #1 at 23-29. Nelson explained the means and procedure by which she calculated the Plaintiff's sentence and concluded, "I have reviewed your husband's file again and determined that we are calculating his time pursuant to policies and procedures of the Dept. of Corrections which are based on statutes. If you wish to pursue this further, you will need to address it through the courts." *Id.* at 25, 29.

With respect to Defendant Carlson, the Plaintiff attached a letter his wife received from Paul Hollenbeck, Associate Director of Offender Services for the CDOC, which contains a "response" to Mrs. Waynewood's time computation concerns by "Mary Carlson, Manager Time/Release Operations." *Id.* at 32. The response reflects Carlson's confirmation that Nelson "provided you with accurate information as to how we calculate parole revocations for sex offenders who committed their crime [sic] in 1995" and concluded "DOC is calculating Mr. Waynewood's time according to statute, case law and normal procedures. I know that's not the answer you wanted to receive, but there is nothing else we can do." *Id.* Hollenbeck further commented that "[s]hould you feel it is necessary to pursue this further, you will need to do so through the legal system." *Id.*

Applying the *Sample* factors to this information, the Court finds the Plaintiff meets the first factor in demonstrating Nelson and Carlson had knowledge of the Plaintiff's problem and, thus, of a risk that unwarranted punishment may be inflicted. However, the Plaintiff fails to meet the second factor in alleging that Nelson and/or Carlson either failed to act or took only ineffectual action under circumstances indicating that their responses to the problem were products of deliberate indifference to the Plaintiff's plight. In fact, unlike the defendant prison records officer in *Sample*, to whom the plaintiff made several inquiries regarding sentence computation, but who only contacted the sentencing judge's chambers once and "admitted that he did nothing further regarding Sample's

case," the Defendants here reviewed the Plaintiff's file, checked their computations, and informed the Plaintiff of their beliefs that the sentence was computed correctly. The Plaintiff disputes none of this conduct. The fact that a court in this District determined the Defendants' beliefs to be incorrect does not itself support a finding that Nelson and Carlson were deliberately indifferent to whether the Plaintiff suffered an unjustified deprivation of his liberty. Accordingly, based on the record before it, the Court finds the Plaintiff fails to state a plausible claim for violation of the Eighth Amendment and concludes Nelson and Carlson are entitled to qualified immunity on these claims as pled.

## III. Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon*, 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991)). Here, the Plaintiff has not previously amended his pleading and has not yet received guidance as to any defective allegations against Nelson and Carlson from the Court. The Court concludes it is possible the Plaintiff may cure the pleading deficiencies for his constitutional claim and, thus, will permit the Plaintiff to file an amended complaint within thirty (30) days of this order.

**CONCLUSION**

In sum, the Court finds the Plaintiff has failed to state a plausible claim under the Eighth Amendment against Defendants Nelson and Carlson in their individual and official capacities in this case. However, because Plaintiff has not yet had an opportunity to amend his Complaint, the Court grants Plaintiff leave to amend his Complaint within 30 days of this order to correct, if possible, the deficiencies noted herein.

Accordingly, based upon the foregoing and the entire record herein, the Court **grants** Defendants' Motion to Dismiss Plaintiff's Complaint [filed July 13, 2015; docket #18] and **orders** the Plaintiff to file an amended pleading in accordance with this order **on or before September 14, 2015**. If Plaintiff fails to comply with this order, the case will be dismissed.

Entered and dated at Denver, Colorado, this 13th day of August, 2015.

BY THE COURT:

Michael E. Hegarty

Michael E. Hegarty
United States Magistrate Judge